CLERK'S COPY

**IN THE UNITED STATES DISTRICT COURT**

FILED

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 AUG 13 PM 1: 43

*Robert M. March*

CLERK-SANTA FE

HEATHER LOVE ROWLEY,

Plaintiff,

vs.                                            No. Civ. 98-1154 SC/LFG

EIGHTH JUDICIAL DISTRICT ATTORNEY'S
OFFICE, JOHN PATERNOSTER, individually
and in his official capacity as Eighth Judicial
District Attorney, FRANK PADILLA, individually
and in his official capacity as Chief Deputy District
Attorney, DONALD GALLEGOS, individually and
in his official capacity as Deputy District Attorney,
SARAH BACKUS, individually and in her official
capacity as Assistant District Attorney, THE VILLAGE
OF QUESTA, FRANK GALLEGOS, in his individual
and official capacity as Chief of the Questa Police Department,
ERIC THOMAS, individually and in his official capacity
as patrolman with the Questa Police Department,
and WILLIAM SCHRAPS, a/k/a "MAITREYA", a/k/a
WILLIAM PRESTON,

Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Eighth Judicial District

Attorney's Office Defendants' (1) Motion to Dismiss on the Ground of Eleventh

Amendment Immunity, filed November 25, 1998 [Doc. No. 6]; (2) Motion to Dismiss

on the Ground of Prosecutorial Immunity, filed December 29, 1998, [Doc. No. 18];

and (3) Motion to Dismiss on the Ground of Qualified Immunity, filed January 22,

44

1999 [Doc. No. 31].[1]  All three motions are pursuant to Fed. R. Civ. P. 12(b)(6) –

dismissal for failure to state a claim upon which relief can be granted.  For the reasons

set forth below, I shall grant Defendants' Eleventh Amendment motion, partially grant

and partially deny Defendants' Prosecutorial Immunity motion, and partially grant and

partially deny Defendants' Qualified Immunity motion.

## I.  STANDARD OF REVIEW - FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS

Granting a motion to dismiss for failure to state a claim "is a harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of

pleading but also to protect the interests of justice." Ramirez v. Oklahoma Dep't of

Mental Health, 41 F.3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted); see

Ayala v. Joy Mfg. Co., 877 F.2d 846, 847-48 (10th Cir. 1989).  When ruling on a

Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and all

well-pleaded allegations in the complaint must be accepted as true. See Albright v.

Oliver, 510 U.S. 266, 268 (1994); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504,

510 (10th Cir. 1998); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  While

all reasonable inferences must be indulged in favor of the plaintiff, conclusory

allegations need not be taken as true. See Weatherhead v. Globe Int'l, Inc., 832 F.2d

---

[1] By the term "Eight Judicial District Attorney's Office Defendants" or "Defendants," I refer to Defendant Eighth Judicial District Attorney's Office and Defendants John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus, in their official and/or individual capacities.  In referring to Defendant Gallegos, I am referring to Defendant Donald Gallegos.

1226, 1228 (10th Cir. 1987); Swanson, 750 F.2d at 813; see also Doyle v. Oklahoma Bar Assoc., 998 F.2d 1559, 1566 (10th Cir. 1993) ( We . . . confin[e] our review to the allegations of the complaint and tak[e] them as true."). A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989). The issue in reviewing the sufficiency of a complaint "is not whether a plaintiff will ultimately prevail, but whether the [plaintiff] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

## II.   BACKGROUND

Plaintiff filed in this Court a thirteen-count Complaint for civil rights violations under the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1988, and for assorted state tort claims. Some of the defendants in this case have been dismissed per stipulation of the relevant parties.[2] Of the Complaint's thirteen counts, only Counts I, II, III, and V (§ 1983 claims), and VI, VII, VIII, and X (state tort law

---

[2] Defendant The Village of Questa and Defendants Frank Gallegos and Eric Thomas, in their official and individual capacities have been dismissed with prejudice from this lawsuit. Consequently, Counts IV, IX (labeled in Complaint as "Count IV"), XI, XII, and XIII also are dismissed.
  Defendant William Schraps, a/k/a "Maitreya," a/k/a William Preston, remains as a defendant in this lawsuit. He is named in Counts I, II, III, V, VI, and X.

claims) are before me.[3] Plaintiff seeks a judgment in her favor, punitive damages, attorney's fees, costs, and pre- and post-judgment interest. Discovery has been stayed pending my rulings on Defendants' motions.

Plaintiff, at all material times, was a resident of Taos County, New Mexico. Defendant Eighth Judicial District Attorney's Office is a district attorney's office organized under New Mexico law and encompasses Colfax, Taos, and Union Counties. At all times pertinent, Defendants Paternoster, Padilla, Gallegos, and Backus were employees of the District Attorney's Office – Paternoster as the District Attorney, Padilla as Chief Deputy District Attorney, Gallegos as Deputy District Attorney, and Backus as Assistant District Attorney and Senior Trial Prosecutor. Plaintiff alleges that Defendant Backus is no longer practicing law.

* * * *

---

[3] Count I is a § 1983 claim for Unlawful Retaliation against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official and individual capacities. Count II is a § 1983 claim for Initiation and Pursuit of Prosecution without Probable Cause against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official and individual capacities. Count III is a § 1983 claim for Unlawful Seizure against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official and individual capacities. Count V is a § 1983 claim for Conspiracy to Violate Plaintiff's Civil Rights against Defendants Paternoster, Padilla, Gallegos, and Backus, in their individual capacities.

Count VI is a state tort law claim for Malicious Abuse of Prosecution against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official and individual capacities. Count VII is a state tort law claim for Negligent Hiring, Supervision, and Training against Defendants Paternoster, Padilla, and Gallegos in their official and individual capacities. Count VIII is a state tort law claim for *Respondeat Superior* against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, and Gallegos, in their official and individual capacities. Count X is a state tort law claim for Civil Conspiracy against Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official and individual capacities.

The relevant facts of this case, as alleged by Plaintiff, are as follows. In October 1995, Plaintiff initiated a paternity action in the Eighth Judicial District Court in Taos against Defendant William Schraps. Defendant Schraps was represented in the paternity action by Defendant Sarah Backus, then an attorney in private practice. The paternity action was settled out of court, and the parties entered into a custody and time-sharing agreement concerning their minor son (the minor son or child). The settlement agreement obligates Defendant Backus to accept documents and process on behalf of Defendant Schraps.

Following the settlement, Defendant Schraps went to Hawaii with the minor son, and stayed almost eight months beyond the period of time agreed to by he and Plaintiff. Plaintiff made various fruitless attempts to have the child returned to her in Taos. During this period of time Defendant Backus became an Assistant District Attorney and Senior Trial Prosecutor with the District Attorney's Office in Taos.

Defendant Schraps and the minor son returned to New Mexico on or about February 8, 1997, and were picked up hitchhiking on their way into Taos by Defendant Backus. Approximately four days later, on or about February 12, 1997, Defendant Backus filed criminal charges in magistrate court in Taos against Plaintiff for Aggravated Battery with a Deadly Weapon (a glass bottle) to Plaintiff's boyfriend Joe Gomez. Although Mr. Gomez filed a statement that Plaintiff struck him in self-defense and filed an affidavit stating that he did not wish to press charges against Plaintiff or

5

testify in the matter and requesting the charge be dropped, Defendant Backus continued

to criminally prosecute Plaintiff.[4]  Plaintiff was arraigned, entered a plea of not guilty,

and, as a condition of release, gave her Smith & Wesson gun to the Taos County

Sheriff's Department.  On the day of the preliminary hearing in the criminal case,

April 21, 1997, Defendant Backus faxed a notice to the court that she was dismissing

the charge against Plaintiff.[5]

On February 26, 1997, Plaintiff filed a motion in state district court in her

custody/paternity case for the return of her son and expanded time-sharing privileges.

On June 5, 1997, a hearing was held on the matter.  Defendant Schraps represented to

the court that he was proceeding *pro se*. (Defendant Backus, who had no hearings set in

the district court courthouse at that time, was present at the hearing, sitting in the

audience section of the courtroom.)  During his cross-examination of Plaintiff,

Defendant Schraps asked Plaintiff if she owned a Lugar gun.  Plaintiff replied she did

not.  At this point, Defendant Backus approached the judge while he was on the bench,

causing the hearing to stop.  Defendant Backus, cupping her hand over mouth and

speaking into the judge's ear, began a whispered, off-the-record, *ex parte* conversation

with the judge, in which she falsely told him that Plaintiff had just perjured herself

---

[4] No charges were filed against Joe Gomez by Defendants for his battery of Plaintiff which caused Plaintiff to strike him in self-defense.

[5] On May 30, 1997, Plaintiff brought criminal charges against Joe Gomez for assault and aggravated battery for an unrelated incident.  These charges were not investigated or prosecuted by Defendants.

because Plaintiff did in fact own a gun. Defendant Backus further informed the judge that she planned to re-file the February 12 criminal charge against Plaintiff, adding two charges (one for stalking Joe Gomez and the other for threatening Lorraine Romero with a weapon), and have Plaintiff arrested.

The judge instructed Defendant Backus to immediately withdraw from the criminal case due to her obvious unethical conflict of interest. Although Defendant Backus indicated that she saw no such conflict, she promised the judge she would immediately withdraw from the criminal case upon return to her office. Defendant Backus never withdrew from the criminal case, however, and continued her criminal prosecution of Plaintiff.

Immediately following the June 5 custody case hearing, Defendant Backus told Plaintiff that if she gave her Lugar gun to the Taos County Sheriff's Office, Defendant Backus would not have Plaintiff arrested. Plaintiff, not owning a Lugar gun, could not and did not accept Defendant Backus' offer. When an agreement was not reached, Defendant Backus indicated that she would have Plaintiff arrested that weekend. The weekend of June 8, 1997, came and went, and Plaintiff was not arrested.

On July 7, 1997, Plaintiff appeared again before the state district court in the custody case, and succeeded in increasing her time-sharing privileges with the minor son. On or about the same day, Defendant Backus refiled the meritless Aggravated Battery with a Deadly Weapon charge, previously filed on February 12, 1997, and

7

added a charge of Stalking of Joe Gomez to the criminal complaint.[6] While Plaintiff was in district court, Defendant Backus secured an invalid arrest warrant for Plaintiff. Within a few hours of the custody hearing, Defendant Backus had Plaintiff arrested on the Aggravated Battery with a Deadly Weapon and Stalking charges. Plaintiff spent two days in jail and on July 9, 1997, Plaintiff was arraigned by the magistrate court and released on the condition of monitoring. Subsequently, Plaintiff filed a motion to dismiss the July 7 criminal charges on the ground that a preliminary hearing had not been held within the 60 days required by law. On October 9, 1997, 90 days after Plaintiff's arraignment, a preliminary hearing was held. The State of New Mexico requested a continuance because it was unprepared for the hearing. The court dismissed the charges against Plaintiff.

Defendant Schraps continues to litigate the custody of the minor son. Through his present attorney, Defendant Schraps has made threats of again exploiting his relationship with Defendant Backus if Plaintiff did not agree to his time-sharing demands.

## III.   STATE ACTORS

Before addressing separately Defendants' arguments regarding Plaintiff's federal § 1983 claims and state tort law claims, I will address a threshold issue common

---

[6] The second additional charge (threatening Lorraine Romero with a weapon), which Defendant Backus informed the custody case judge she was planning to file, was never filed.

to both the federal and state claims against Defendants in their entity or official capacities – whether the Defendants are state actors under the facts of this case. In their Eleventh Amendment motion to dismiss, Defendants, in their entity or official capacities, contend that all of Plaintiff's claims against them should be dismissed for failure to state a claim upon which relief can be granted because, as state actors, Plaintiff's suit against them is barred under the Eleventh Amendment and/or they are not "persons" under 42 U.S.C. § 1983. Plaintiff contends that Defendants are not state actors or "arms of the state" and, therefore, that Defendants' Eleventh Amendment motion to dismiss is meritless on both grounds.

In determining whether Defendants, in their governmental entity or official capacities, are entitled to Eleventh Amendment immunity and whether they are "persons" under § 1983, I must decide initially whether, under the facts of this case, district attorneys are arms of the state or of the counties in which their offices are located.[7]

Whether a governmental entity is an arm of the state is a question of federal law. See Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429 n.5 (1997); Duke v. Grady Mun. Sch., 127 F.3d 972, 975 (10th Cir. 1997). As a matter of federal law, I "may consider both the relevant state statutes, regulations, and constitutional provisions

---

[7] For simplicity's sake, when using the term "district attorney," I generally am referring not only to a district attorney, but also to his assistants, such as chiefs deputy district attorney, deputies district attorney, and assistants district attorney.

which characterize the entity, and the holdings of state courts on the question." Duke, 127 F.3d at 978 (internal quotations omitted); see Doe, 519 U.S. at 429 n.5 ("federal question can be answered only after considering the provisions of state law that define the agency's character"). While I may give deference to a state court's rationale, "the holding is not dispositive as a matter of federal law." Duke, 127 F.3d at 978 (internal quotations omitted). Relevant factors in determining an entity's status include: (1) the characterization and definition of the entity in its enabling and implementation legislation; (2) state court interpretations and characterization of the entity; (3) the functions of the entity; (4) local versus state control of the entity; (5) the fiscal independence of the entity; and (6) the legal liability of the state for the entity's debts. See id.; see also McMillian v. Monroe County, Ala., 520 U.S. 781, 786-92 (1997) (5-4 decision); Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1232 (10th Cir. 1999). Because a government official may be a state official for some purposes and a local government official for others, in its arm of the state inquiry, a court should focus on whether the alleged action of the government official represents an action by the state or by the relevant local government, and not categorically decide the official's governmental status. See McMillian, 520 U.S. at 785-86.

The factors of characterization and function clearly support the conclusion that Defendants are state actors in the criminal context. There is no question that under New Mexico law, district attorney's offices play both state and county roles. See N.M.

10

Const., art. VI, § 24 (1992 Repl. Pamp.) (A district attorney "shall be the law officer of the state and of the counties within his district."); N.M. Stat. Ann. §§ 36-1-18 to 36-1-20, 36-1-22 (1991 Repl. Pamp.); Hanagan v. Board of County Comm'rs, 64 N.M. 103, 105, 325 P.2d 282, 283 (Sup. Ct. 1958). However, it is also clear that, in performing their duties in the criminal context, district attorneys represent the state, and not the counties in their district. See Perea v. Board of Torrance County Comm'rs, 77 N.M. 543, 546, 425 P.2d 308, 309-10 (Sup. Ct. 1967); New Mexico ex rel. Ward v. Romero, 17 N.M. 88, 99-100, 125 P. 617, 618-22 (Sup. Ct. 1912); Collyer v. New Mexico Taxation and Revenue Dep't, 121 N.M. 477, 478, 479-80, 913 P.2d 665, 666, 667-68 (Ct. App. 1995); see also N.M. Stat. Ann. § 36-1-18(A) (1991 Repl. Pamp.) (statutory duties of district attorney and his office include prosecuting criminal cases for the state "in all courts of record of the counties of his district").

Control of district attorney's offices also is primarily in the hands of the state. After his election, a district attorney must qualify by filing an oath of office and a bond for $5,000 in the state Secretary of State's Office. See id. § 36-1-1. Although district attorneys are elected by the people in their district, they are not removable under the removal statute which applies exclusively to elected local officers, such as district or county officials. See id. §§ 10-4-1, 10-4-29 (1995 Repl. Pamp.); New Mexico ex rel. Prince v. Rogers, 57 N.M. 686, 687-88, 262 P.2d 779, 780 (1953). Rather, district attorneys are removable under a separate statute – by filing of a charge with the state

11

supreme court, which has original jurisdiction, and prosecution by the state attorney general. See N.M. Stat. Ann. §§ 36-1-10 to 36-1-11 (1991 Repl. Pamp.). Additionally, fiscal control is in the hands of the state. Although the facilities for a district attorney's office, and the maintenance of and utilities for such facilities, are to be provided by the relevant counties, the salaries and non-facility expenses of a district attorney and his staff are funded by the state. See id. §§ 36-1-8, 36-1-8.1, 36-1-28 (1998 Cum. Supp.); see also id. § 36-1-3 (1991 Repl. Pamp.).[8] In fact, a district attorney's salary is set by state law. See id. § 36-1-6 (1991 Repl. Pamp. & 1998 Cum. Supp.), § 36-1-7 (1991 Repl. Pamp.); see also Ward, 17 N.M. at 100, 125 P. at 622.

The only questionable factor is whether, in a case such as this, a judgment against a district attorney's office in New Mexico would be paid out of the state treasury. It is unclear from New Mexico's statutory scheme and caselaw how a district attorney's office satisfies money judgments against it. See N.M. Const., art. VIII, § 7 (1992 Repl. Pamp.); N.M. Stat. Ann. §§ 15-7-2, 15-7-10, 41-4-4, 41-4-23 (1996 Repl. Pamp.), § 15-7-3 (1996 Repl. Pamp. & 1998 Supp.). Nevertheless, after carefully examining the relevant statutory and constitutional materials, as well as relevant state court decisions, I am persuaded that under the facts of this case and in the

_____

[8] Assistants to a district attorney may be appointed within state legislative appropriations. See N.M. Stat. Ann. §§ 36-1-5, 36-1-8.4 (1991 Repl. Pamp.).

12

context of criminal prosecutions, district attorney's offices in New Mexico are arms of the state, and not of the counties in which they are located.

## IV. § 1983 CLAIMS - GOVERNMENTAL ENTITY AND OFFICIAL CAPACITY

Suits in federal court for damages or declaratory relief against states, state agencies or departments, or state officials in their official capacities by citizens of these states are barred by the Eleventh Amendment, unless a state unequivocally waives its sovereign immunity or Congress expressly waives the states' sovereign immunity in creating the federal statutory cause of action at issue. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-102 (1984); Buchwald v. University of New Mexico Sch. of Med., 159 F.3d 487, 494-95 (10th Cir. 1998). New Mexico has not waived its Eleventh Amendment immunity from suit in federal court. See N.M. Stat. Ann. § 41-4-4(F) (1996 Repl. Pamp.). Congress did not rescind the states' Eleventh Amendment immunity in enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 341-45 (1979); see also Pennhurst, 465 U.S. at 120. Consequently, having found that Defendants are state actors under the facts of this case, I conclude that Plaintiff's federal action against the Eighth Judicial District Attorney Defendants in their entity or official capacities is barred by the Eleventh Amendment. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1978); see also Pennhurst, 465 U.S. at 120.

13

In addition, where damages are sought in a § 1983 action, a state or a state official sued in her official capacity is not a "person" for § 1983 purposes, and cannot be sued under § 1983 in either federal or state court. See Will, 491 U.S. at 71 & n.10; see also Quern, 440 U.S. at 341-45.

Therefore, I will dismiss, for lack of jurisdiction and, in the alternative, for failure to state a claim upon which relief can be granted, Plaintiff's federal § 1983 claims against Defendant Eighth Judicial District Attorney's Office, and Defendants John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus, in their official capacities (Counts I-III of the Complaint).

## V.  § 1983 CLAIMS - INDIVIDUAL CAPACITY

Plaintiff alleges that to punish her and to manipulate the civil process against her and in favor of a former client, Defendant Schraps, Defendant Backus filed criminal charges in magistrate court against Plaintiff on two occasions without probable cause, signed and swore falsely to the truth of two criminal complaints against Plaintiff, dismissed and re-filed the criminal charge contained in the first complaint, failed to prosecute criminal charges brought by Plaintiff, and secured an arrest warrant without probable cause. Plaintiff also alleges that Defendant Backus had an *ex parte* conversation with the judge in a custody hearing between Plaintiff and Defendant Schraps, in which Defendant Backus made false statements about Plaintiff, and that the conversation was a calculated attempt by Defendant Backus to sway the custody

14

proceedings in favor of Defendant Schraps, to taint the proceedings against Plaintiff, and to punish or retaliate against Plaintiff for exercising her constitutional rights. Plaintiff further alleges that Defendants Paternoster, Padilla, and Gallegos violated her civil rights by conspiring with Defendant Backus, by their establishment and/or ratification of Office policies, and by their hiring, training, and supervision of Defendant Backus. Defendants Paternoster, Padilla, Gallegos, and Backus, in their individual capacities, assert a defense of prosecutorial absolute immunity or, in the alternative, a defense of qualified immunity to Plaintiff's § 1983 claims against them.

## A.    Absolute Prosecutorial Immunity

Prosecutors sued in their individual capacities are absolutely immune from suit under § 1983 when the underlying actions are "intimately involved with the judicial phase of the criminal process," such as initiating and pursuing criminal prosecutions. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). Absolute prosecutorial immunity, however, is of an exceptional character, and should be recognized sparingly. See Buckely v. Fitzsimmons, 509 U.S. 259, 269 (1993); Forrester v. White, 484 U.S. 219, 224 (1988). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991); see Buckley, 509 U.S. at 269.

"[I]n determining immunity, [a court] examine[s] the nature of the function performed, not the identity of the actor who performed it." Kalina v. Fletcher, 522

U.S. 118, ___, 118 S.Ct. 502, 508 (1997) (internal quotations omitted).  The purpose

of absolute prosecutorial immunity is to allow prosecutors "the latitude to perform their

[quasi-judicial] tasks absent the threat of retaliatory section 1983 litigation."  Pfeiffer v.

Hartford Fire Ins. Co., 929 F.2d 1484, 1489-90 (10th Cir. 1991) (internal quotations

omitted); see Burns, 500 U.S. at 494 ("Absolute immunity is designed to free the

*judicial process* from the harassment and intimidation associated with litigation.").  To

effectuate this goal, a distinction is drawn "between a prosecutor's actions in

connection with the judicial process, which are protected by prosecutorial immunity,

and those that are primarily investigative or administrative in nature," and hence not

protected from suit.  Pfeiffer, 929 F.2d at 1490; see Burns, 500 U.S. at 491-92.

Investigative or administrative activities, however, may be protected by absolute

prosecutorial immunity "when these functions are necessary so that a prosecutor may

fulfill his function as an officer of the court."  Pfeiffer, 929 F.2d at 1490 (internal

quotations omitted).  The key to devising between prosecutorial and nonprosecutorial

investigative and administrative activities is *advocacy for the state*, "the prosecutor's

main function and the one most akin to his quasi-judicial role."  Id. (internal quotations

omitted); see Buckley, 509 U.S. at 273.  "Thus, the more distant a function is from the

judicial process and the initiation and presentation of the state's case, the less likely it is

that absolute immunity will attach."  Pfeiffer, 929 F.2d at 1490.

### 1.    Defendant Backus

Much of the alleged conduct of Defendant Backus underlying Counts I, II, III, and V is protected under the doctrine of absolute immunity.[9] Filing and re-filing criminal charges fall within the ambit of conduct "advocacy for the state" that is "intimately associated with the judicial phase of the criminal process" and, thus, are acts protected by absolute prosecutorial immunity. See Kalina, 522 U.S. at ___, 118 S.Ct. at 509; Burns, 500 U.S. at 486. This is true even if such criminal complaints lack probable cause or were initiated for malicious reasons or in bad faith. See Buckley, 509 U.S. at 274 n.5; see also Kalina, __ U.S. at ___, 118 S.Ct. at 506 & n.11, 507; Lerwill v. Johnson, 712 F.2d 435, 441 (10th Cir. 1983). Dismissing criminal complaints and failing to prosecute criminal complaints brought by a complaining witness also are actions that are clearly prosecutorial functions, protected by absolute immunity. See Kalina, 522 U.S. at ___, 118 S.Ct. at 507; Imbler, 424 U.S. at 424, 431 n.33. Additionally, a prosecutor is absolutely immune when she secures an arrest warrant without swearing to the truth of it. See Kalina, 522 U.S. at ___, 118 S.Ct. at 509.

---

[9] The Supreme Court has emphasized that, although absolute immunity "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest actions deprives him" of a constitutional right, the public is not "powerless to deter misconduct or punish that which occurs." Imbler v. Pachtman, 424 U.S. 409, 427, 428-29 (1976). Although prosecutors may be immune from civil liability for their actions, they may not be immune from criminal punishment. See id. at 429. "Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." Id.

However, Defendant Backus is not protected for her alleged swearing to the truth of two criminal complaints or her *ex parte* communication. Personally signing and swearing to the truth of a criminal complaint is not within the purview of "prosecutorial conduct," but is conduct that is performed by a complaining witness. See Kalina, 522 U.S. at ____, 118 S.Ct.at 509-10. Consequently, such acts by Defendant Backus are not protected by absolute immunity.

Under the alleged facts, Defendant Backus' *ex parte* conversation with the judge in Plaintiff's custody hearing also is not protected by absolute immunity. Defendant Backus' conduct cannot be characterized as primary prosecutorial conduct or as investigative/administrative conduct protected by absolute prosecutorial immunity. In speaking with the judge, Defendant Backus was not acting in a prosecutorial function. Nor can Defendant Backus be said to have been acting as an "officer of the court," as that term is used in the prosecutorial immunity jurisprudence. See, e.g., Pfeiffer, 929 F.2d at 1490; Snell v. Tunnell, 920 F.2d 673, 693 (10th Cir. 1990) (cases cited therein). The custody action was in no way related to the criminal prosecution of Plaintiff by Defendants and the state, the state was not a party to the custody action, and Defendant Backus' conduct was not related to the initiation and presentation of the state's criminal case against Plaintiff. Defendant's false, unsolicited *ex parte* communication, thus, fails to invoke the policy behind prosecutorial immunity – protecting the criminal judicial process and allowing prosecutors to perform their

function as state advocates without apprehension of liability. Accordingly, Defendant Backus is not entitled to absolute prosecutorial immunity for such *ex parte* communication.

Furthermore, contrary to Defendants' contention, Defendant Backus is not protected by absolute witness immunity for her *ex parte* communication, as she was not a witness or functioning as one when she communicated with the judge. See Briscoe v. LaHue, 460 U.S. 325 (1983). Defendant Backus was not on the witness stand, was not subject to compulsory process, had not taken an oath, and had not responded to questions on direct examination or cross-examination. See id. at 342.

Therefore, I will grant Defendants' motion to dismiss on grounds of absolute immunity as to Defendant Backus' acts of filing, dismissing, and refiling criminal charges against Plaintiff, of failing to prosecute charges brought by Plaintiff, and of securing an arrest warrant for Plaintiff. I will deny Defendants' motion to dismiss on grounds of absolute immunity as to Defendant Backus' swearing to the truth of the two criminal complaints against Plaintiff and as to Defendant Backus' *ex parte* communication with the custody hearing judge on June 5, 1997. As a result of these decisions, Defendant Backus, in her individual capacity, is entitled to absolute immunity only as to Count III (Unlawful Seizure) and, only to the extent they incorporate absolutely immune conduct, Counts I (Retaliation), II (Initiation and Pursuit

of Prosecution without Probable Cause), and V (Conspiracy). Defendant Backus is not otherwise entitled to absolute immunity.

### 2. Defendants Paternoster, Padilla, and Gallegos

Administrative conduct, including supervisory activity, does not fall within the ambit of prosecutorial immunity unless it is intimately involved with advocacy of the state's case. See Pfeiffer, 929 F.2d at 1490. The alleged supervisory conduct of Defendants Paternoster, Padilla, and Gallegos is distant from the judicial process and clearly not activity within a prosecutor's primary function. See Imbler, 424 U.S. at 430-31. Therefore, Defendants Paternoster, Padilla, and Gallegos are not entitled to absolute immunity as to their encouragement and establishment of customs or policies which condoned or encouraged the alleged civil rights violations suffered by Plaintiff or their hiring, training, and supervision of Defendant Backus.

### B. Qualified Immunity

Special rules apply when a defendant raises the defense of qualified immunity. "Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred." Migneault v. Peck, 158 F.3d 1131, 1139 (10th Cir. 1998), petition for cert. filed, 167 U.S.L.W. 3496 (U.S. Jan. 20, 1999) (No. 98-1178); see Wilson v. Layne, ___ U.S., ___, ___, 119 S.Ct.

1692, 1697 (1999).[10] "In showing that the law was clearly established, the plaintiff does not have to show that the specific action at issue has been held unlawful, but the alleged unlawfulness of the defendant's conduct must be apparent in light of preexisting law." Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998); see Migneault, 158 F.3d at 1139. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). To show a right is clearly established, there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the Plaintiff's proposition. See Armijo, 159 F.3d at 1260. Unless both prongs of the test are satisfied, qualified immunity must be granted. See Migneault, 158 F.3d at 1139.

When a qualified immunity defense is raised in the context of a 12(b)(6) motion to dismiss, a court must assume the truth of the plaintiff's allegations in determining whether the official's conduct violated clearly established law. However, a heightened pleading standard is applied in the Tenth Circuit. This heightened pleading standard

---

[10] In the Tenth Circuit, when state of mind is an essential element of the plaintiff's substantive claim and qualified immunity has been raised as a defense on a motion for summary judgment, a modified qualified immunity analysis is applied, with the initial burden on the defendant. See Gehl Group v. Koby, 63 F.3d 1528, 1535 (10th Cir. 1995); see also Lackey v. County of Bernalillo, No. 97-2265, 166 F.3d 1221, 1999 WL 2461 at *4 (10th Cir. Jan. 5, 1999) (unpublished disposition). But see Crawford-El v. Britton, ___ U.S. ___, ___, 118 S.Ct. 1584, 1594-95 (1998) (striking down a heightened burden of proof in context of summary judgment motion on ground of qualified immunity and unconstitutional motive claim). However, because the defense of qualified immunity is before me in the case at bar on a motion to dismiss, and not a motion for summary judgment, I will not apply the Gehl modified approach to any of Plaintiff's improper intent constitutional claims.

requires "the complaint to contain specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." Dill v. City of Edmond, 155 F.3d 1193, 1204 (1998) (internal quotations omitted); see Breidenbach v. Bolish, 126 F.3d 1288, 1292 & n.2 (10th Cir. 1997). But see Crawford-El v. Britton, ___ U.S. at __, 118 S.Ct. at 1584, 1594-95 (1998) (calling into doubt heightened pleading standard for qualified immunity claims). If the original complaint is deficient, the plaintiff should file an amended complaint setting forth the requisite factual allegations. See Breidenbach, 126 F.3d at 1293. In response to Defendants' Motion to Dismiss on the Ground of Qualified Immunity, Plaintiff did not amend her Complaint or seek leave to do so.

### 1.     Defendant Backus

#### a.     Initiation and Pursuit of Prosecution without Probable Cause - Count II

In analyzing Count II of Plaintiff's Complaint, only Defendant Backus' acts of swearing to the truth of two criminal complaints need be viewed through the lense of qualified immunity, as Defendant Backus' other acts in initiating and pursuing her criminal prosecution of Plaintiff are protected by absolute immunity.[11] Contrary to

---

[11] In their Brief in Support of Motion to Dismiss on the Ground of Qualified Immunity, Defendants' argue that Defendant Backus' conduct was protected by *absolute* immunity, failing to discuss specifically Defendant Backus' swearing to the veracity of the two criminal complaints or Kalina v. Fletcher, 422 U.S. 118, 118 S.Ct. 502 (1997), or to put forth any argument why Defendant Backus is protected from liability because of qualified immunity.

Defendants' contention, Defendant Backus is not protected as a matter of law by qualified immunity for swearing to the truth of two criminal complaints. See Roberts v. Kling, 144 F.3d 710, 712 (10th Cir. 1998) (per curiam) (Roberts II), cert. denied, ___ U.S. ___, 119 S.Ct. 1028 (1999). I must determine, then, whether Plaintiff has carried her burden in demonstrating that Defendant Backus is not entitled to qualified immunity for her alleged role as a complaining witness in swearing to the truth of the two criminal complaints. The first criminal complaint to which Defendant Backus swore to the truth of in February 1997 charged Plaintiff with Aggravated Battery with a Deadly Weapon of Joe Gomez (Aggravated Battery charge). The second criminal complaint to which Defendant Backus swore to the truth of in July 1997 recharged Plaintiff with the Aggravated Battery count and added a count of Stalking Joe Gomez (Stalking charge). I will look at each charge in turn.

The right to be free from baseless criminal prosecution arises under the Fourth Amendment. See Wyatt v. Cole, 504 U.S. 158, 164-65 (1992); Malley v. Briggs, 475 U.S. 335, 342 (1986); see also Taylor v. Meacham, 82 F.3d 1556, 1561-62 (10th Cir. 1996); Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996). In addition, Plaintiff's claim against Defendant Backus for initiation and pursuit of prosecution without probable cause is at its core a claim for malicious prosecution. See Anthony v. Baker, 955 F.2d 1395, 1399 (10th Cir. 1992) (a § 1983 action for malicious prosecution "attempts to hold the complaining witness liable for his role in initiating a baseless

23

prosecution" (internal quotations and footnote omitted)). Malicious prosecution under the Fourth Amendment can be the basis of a § 1983 claim. See Taylor, 82 F.3d at 1561; see also Heck v. Humphrey, 512 U.S. 477, 483-84 (1994); Haywood v. Nye, 999 F.Supp. 1451, 1461(D. Utah 1998). To succeed on a malicious prosecution claim, a plaintiff must establish not only a violation of the Fourth Amendment, but also the common law elements of malicious prosecution. See Taylor, 82 F.3d at 1561; Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996). The elements of malicious prosecution are: (1) the defendant initiated, or procured the institution of, criminal proceedings against the plaintiff without probable cause; (2) the proceedings were initiated primarily for a purpose other than that of bringing an offender to justice; and (3) the proceedings were terminated in favor of the accused. See Johnson v. Weast, 123 N.M. 470, 475, 943 P.2d 117, 122 (Ct. App. 1997).

For the Aggravated Battery charge in the two criminal complaints, Plaintiff has alleged sufficient facts to meet all three elements of malicious prosecution. First, the charge was initiated and sworn to by Defendant Backus without probable cause. Plaintiff allegedly acted in self-defense, as supported by the alleged filed statements of the victim, Joe Gomez.

Second, Defendant Backus initiated and swore to the truth of the charge not to bring Plaintiff to justice, but to intimidate and harass her, and in retaliation. Allegedly before Defendant Backus became a district attorney, she represented Defendant

Schraps, the father of Plaintiff's child, in a paternity/custody action brought by Plaintiff; Defendant Backus is obligated to accept documents on behalf of Defendant Schraps as part of a custody settlement agreement; Defendant Backus filed the Aggravated Battery charge the first time a few days after Defendant Schraps returned to Taos with the minor child, after taking the child to Hawaii and keeping the child in violation of the custody settlement agreement; it can be inferred that Defendant Backus knew of the return of Defendant Schraps and the child to Taos because she picked them up hitchhiking; it can be inferred that Defendants Backus and Schraps expected Plaintiff to file a motion in the custody case for the return of the child to her once the child and Defendant Schraps had returned to Taos; Defendant Backus informed, *ex parte*, a judge, during a custody hearing between Plaintiff and Defendant Schrapps, that she was going to re-file the Aggravated Battery charge, add additional charges, and have Plaintiff arrested that weekend; rather than immediately filing the Aggravated Battery charge, as she threatened, Defendant Backus re-filed the charge approximately one month after Defendant Backus' statement to the custody judge – on the same day as a custody hearing for Plaintiff and Defendant Schraps; Plaintiff was arrested on the re-filed charge on the day of the custody hearing and jailed for two days; and Defendant Backus continued to prosecute Plaintiff, even though the district judge in the custody case instructed her to withdraw immediately from the criminal case(s) because of her clear unethical conflict of interest.

Third, the Aggravated Battery charge was terminated in Plaintiff's favor both times it was brought. The first time, Defendant Backus, on the day of the preliminary hearing, faxed a notice to the court that she was dismissing the criminal complaint against Plaintiff. The second time, the court dismissed the criminal complaint against Plaintiff because the preliminary hearing had not been held within the 60 days required by law and because the prosecutor was unprepared for the untimely preliminary hearing.

I conclude that as to the Aggravated Battery charge contained in the February and July 1997 criminal complaints, Plaintiff has alleged sufficiently that Defendant Backus' conduct violated a constitutional right. I also conclude the constitutional right alleged by Plaintiff was clearly established at the time Defendant Backus swore to the truth of the Aggravated Battery charge in the two criminal complaints in February and July 1997. See Taylor, 82 F.3d at 1561; see also Heck, 512 U.S. at 483-84; Wolford, 78 F.3d at 489. Therefore, as to this portion of Count II of Plaintiff's Complaint, I conclude Defendant Backus, in her individual capacity, is not entitled to qualified immunity.

As to the Stalking charge in the second criminal complaint, Plaintiff, while meeting elements two and three of the common law action of malicious prosecution, has failed to meet element one. Plaintiff has alleged insufficient facts under the heightened pleading standard to show that Defendant Backus falsely swore to the truth

of the Stalking charge or that the charge lacked probable cause. See Taylor, 82 F.3d at 1561-62. Rather, Plaintiff's statements concerning the factual basis of the Stalking charge and the existence of probable cause are merely conclusory statements. Therefore, as to this portion of Plaintiff's claim in Count II of her Complaint, I conclude that Defendant Backus, in her individual capacity, is entitled to qualified immunity.

### b. Retaliation - Count I

In Count I of her Complaint, Plaintiff alleges that as a direct result of the personal animus of Defendants Backus and Schraps towards Plaintiff and/or of Plaintiff's pursuit of her lawsuit against Defendant Schraps, that Defendant Backus unlawfully and maliciously attempted to harass, intimidate, and punish her for exercising her constitutional rights, and oppressively and unlawfully attempted to limit her access to the courts. As already discussed, much of Defendant Backus' conduct underlying Plaintiff's Retaliation claim is protected by absolute prosecutorial immunity. As to the conduct which is unprotected – swearing to the truth of the two criminal complaints (both charges of Aggravated Battery and Stalking) and the *ex parte* communication – I conclude that Defendant Backus is not entitled to qualified immunity.

Plaintiff has alleged sufficiently a deprivation of an actual constitutional right that was clearly established in 1997, the time of the alleged conduct of Defendant

Backus. The right of access to the courts is a well-established fundamental right. See Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990); Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir. 1985). The "right is one of the privileges and immunities accorded citizens under Article 4 of the Constitution," the Fourteenth Amendment, the First Amendment, and the Due Process Clause. Smith, 899 F.2d at 947; see also Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148 (1907). Additionally, government officials may not retaliate against or harass a citizen because of the citizen's exercise of her right of access to the courts. See Smith, 899 F.2d at 947. "This principle applies even where the action taken in retaliation would be otherwise permissible. [I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [§ 1983] even if the act, when taken for a different reason, would have been proper." Id. at 948 (internal quotations omitted) (second alteration added); see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283 (1977) (even though government employee "could have been discharged for no reason whatever," allegation that decision not to rehire was in retaliation for protected speech stated constitutional claim).

The core inquiry in a retaliation claim is whether as a practical matter there is a realistic or reasonable likelihood that the alleged retaliatory conduct would not have occurred but for the hostility or punitive animus towards the plaintiff because she exercised specific constitutional rights. See Wolford, 78 F.3d at 488-89; Gehl Group

v. Koby, 63 F.3d 1528, 1534 n.6 (10th Cir. 1995). Defendant Backus is alleged to have: (1) sworn to the truth of two criminal complaints against Plaintiff, both of which were dismissed; and (2) interrupted a custody hearing in a case in which the state was not a party and spoken *ex parte* at the bench with the state district judge in that hearing, in order to provide false and negative information about the Plaintiff. Plaintiff's allegations regarding the timing and context of Defendant Backus' actions, the relationship among Defendant Backus, Defendant Schraps, and Plaintiff, and the unethical involvement of Defendant Backus in prosecuting Plaintiff, as recited earlier, are sufficient to establish a retaliatory motive on the part of Defendant Backus – that but for Defendant Backus' animus towards Plaintiff, Defendant Backus would have neither sworn to the truth of the two criminal complaints nor have communicated *ex parte* with the custody judge. See Gehl, 63 F.3d at 1537. Therefore, as to Defendant Backus' acts of swearing out the February and July 1997 criminal complaints and her *ex parte* communication which underlie Count I, I conclude that Defendant Backus, in her individual capacity, is not protected by qualified immunity.

     c.    Conspiracy - Count V

Allegations of conspiracy may form the basis of a § 1983 claim. See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998); Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994). However, specific facts must be alleged by the plaintiff to show agreement and concerted action among the defendants. See

29

Tonkovich, 159 F.3d at 533; Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). Conclusory allegations without supporting facts are insufficient. See Tonkovich, 159 F.3d at 533; Durre, 869 F.2d at 545. Plaintiff has failed to allege sufficient facts that Defendant Backus conspired with other Defendants to deprive Plaintiff of her constitutional rights. The alleged facts that Defendants Backus, Paternoster, Padilla, and Gallegos had staff meetings and discussed their cases, and that Defendants Paternoster, Padilla, and Gallegos supervised Defendant Backus are insufficient to infer under the heightened pleading standard that there was an agreement and concerted action amongst them and that they conspired to deprive Plaintiff of her constitutional rights. See Tonkovich, 159 F.3d at 533; Durre, 869 F.2d at 545. Plaintiff also has alleged insufficient facts as to a conspiracy between Defendant Backus and the non-District Attorney's Office Defendants. Therefore, because Plaintiff has failed to allege sufficiently a deprivation of her constitutional rights, I conclude that Defendant Backus is entitled to qualified immunity as to Count V of Plaintiff's Complaint.

### 2.    Defendants Paternoster, Padilla, and Gallegos

Plaintiff's claims in Count I, II, III, and V of her Complaint against Defendants Paternoster, Padilla, and Gallegos are for their failure to supervise and train Defendant Backus, establishment or encouragement of policies and customs which resulted in constitutional deprivations, and/or adoption or ratification of Defendant Backus'

conduct. Defendants respond that Defendants Paternoster, Padilla, and Gallegos are protected by qualified immunity for these supervisory acts.

I agree that Defendants Paternoster, Padilla, and Gallegos are entitled to qualified immunity for their supervisory acts relating to the alleged conduct of Defendant Backus which is protected by absolute or qualified immunity. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (If the defendant-employee inflicted no constitutional injury on the plaintiff, then "it is inconceivable that [the defendant-supervisor] could be liable" to the plaintiff.); Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised."). Accordingly, Defendants Paternoster, Padilla, and Gallegos, in their individual capacities, are entitled to qualified immunity for their supervisory acts relating to the immune conduct of Defendant Backus − (1) Count I (filing, dismissing, and refiling criminal charges against Plaintiff; failing to prosecute charges brought by Plaintiff; and securing an arrest warrant for Plaintiff); (2) Count II (filing, dismissing, and refiling criminal charges against Plaintiff; failing to prosecute charges brought by Plaintiff; securing an arrest warrant for Plaintiff; and swearing to the truth of Stalking charge in July 1997 criminal complaint); (3) Count III; and (4) Count V.

As to the supervisory acts of Defendants Paternoster, Padilla, and Gallegos relating to the nonimmune conduct of Defendant Backus which underlies Counts I and II, I conclude that Plaintiff has met her burden under the qualified immunity analysis. While there is no concept of strict supervisor or *respondeat superior* liability under § 1983, "state actors who participate in a [constitutional] violation in a supervisory role may incur liability." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotations omitted); see Kaul v. Stephan, 83 F.3d 1208, 1213 n.3 (10th Cir. 1996); Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992). Furthermore, "the Tenth Circuit has clearly established that a supervisor may be individually liable for failing to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights." Sutton, 173 F.3d at 1241 (citing Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) and McClelland v. Facteau, 610 F.2d 693, 696-98 (10th Cir. 1979)); see Anthony v. Baker, 767 F.2d 657, 666 (10th Cir. 1985).

To succeed on a § 1983 supervisor claim, a plaintiff "must establish a deliberate, intentional act by the supervisor to violate constitutional rights." Jenkins, 81 F.3d at 994-95 (internal quotations omitted); see Lankford v. City of Hobart, 73 F.3d 283, 287 (10th Cir. 1996). This standard may be met by showing, for example, that "the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." Jenkins, 81 F.3d at 995. In other words,

a "supervisor is not liable under section 1983 unless an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Meade, 841 F.2d at 1527 (internal quotations omitted).

Plaintiff has sufficiently averred in her Complaint that the supervisory conduct of Defendants Paternoster, Padilla, and Gallegos had actual knowledge of and acquiesced in Defendant Backus' violation of Plaintiff's constitutional rights. Plaintiff alleges that the District Attorney's Office held staff meetings to discuss pending cases and that it can be inferred that staff members discussed cases with each other. It can be inferred further that Defendants Paternoster, Padilla, and Gallegos: (1) knew of Defendant Backus' criminal prosecution of Plaintiff, of the factual bases for the prosecution, of Defendant Backus' presence and conduct at the custody hearing on June 5, 1997, of Defendant Backus' relationship to Defendant Schraps and Plaintiff, and of Defendant Backus' illegal and unethical conflict of interest in prosecuting Plaintiff; and (2) failed to prevent or halt Defendant Backus' unconstitutional conduct. Furthermore, the law on supervisory liability under § 1983 was clearly established before the time of the alleged conduct of Defendants Paternoster, Padilla, and Gallegos in 1997. See, e.g., Lankford, 73 F.3d at 287; McClelland, 610 F.2d at 696-98.

Accordingly, Defendants Paternoster, Padilla, and Gallegos, in their individual capacities, are not protected by qualified immunity for their supervisory role in the

nonimmune conduct of Defendant Backus which underlies Count I (swearing to the truth of the February and July 1997 criminal complaints and the *ex parte* communication) and Count II (swearing to the truth of the Aggravated Battery charge in the February and July 1997 criminal complaints).

## VI.  STATE TORT LAW CLAIMS

As discussed previously, Defendant Eighth Judicial District Attorney's Office and Defendants Paternoster, Padilla, Gallegos, and Backus, in their official capacities, are immune from suit in federal court under the Eleventh Amendment. See Pennhurst, 465 U.S. at 98-102, 120; Will, 491 U.S. at 71.  Therefore, I will dismiss without prejudice, for lack of jurisdiction, Plaintiff's state law claims against Defendant Eighth Judicial District Attorney's Office (Counts VI, VIII, X) and Defendants John Paternoster (Counts VI-VIII, X), Frank Padilla (Counts VI-VIII, X), Donald Gallegos (Counts VI-VIII, X), and Sarah Backus (Counts VI, X), in their official capacities. Defendant Eighth Judicial District Attorney's Office, consequently, is dismissed with and without prejudice from this lawsuit.

Although not specifically stated by Plaintiff, her state tort law claims are necessarily pursuant to the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to 41-4-27 (1996 Repl. Pamp.).  It is unclear from Defendants' briefs whether they are asserting that absolute or qualified immunity applies to Plaintiff's state tort law claims. It also is unclear under state law whether these immunity doctrines were intended to

apply in the context of New Mexico Tort Claims Act suits.  See Romero v. Sanchez, 119 N.M. 690, 696, 895 P.2d 212, 218 (1995) ("Whether the doctrine of qualified immunity protects an official from an action brought under the Tort Claims Act is an open question.").  Cf. Candelaria v. Robinson, 93 N.M. 785, 790, 606 P.2d 196, 200 (Ct. App. 1980) ("It is unnecessary to determine whether the immunity involved in the . . . trial court's ruling was judicial, executive, absolute or qualified. . . .  The applicable immunity claim, in this case, is the immunity provided by the [New Mexico] Tort Claims Act.").  However, after considering the development of the absolute and qualified immunity doctrines and of the New Mexico Tort Claims Act, I conclude that the doctrines of prosecutorial and qualified immunity do not apply to state law claims brought pursuant to the New Mexico Tort Claims Act.  Not only have absolute and qualified immunity developed as defense to federal § 1983 and Bivens actions, but the New Mexico Tort Claims Act appears to have been enacted as an exclusive provision of sovereign or governmental immunity for state actors.  See Romero, 119 N.M. at 696, 895 P.2d at 818; N.M. Stat. Ann. § 41-4-2 (1996 Repl. Pamp.).  Therefore, any request by Defendants for dismissal of Plaintiff's state law claims against them in their individual capacities based on the doctrines of absolute or qualified immunity will be denied.

I note, however, that Plaintiff's state law claims may be barred by the New Mexico Tort Claims Act, as there appears to be no waiver of immunity for district

35

attorneys under the Act, see N.M. Stat. Ann. §§ 41-4-2 to 41-41-4(A) (1996 Repl. Pamp.); Peterson v. Rasmussen, Nos. 95-2246 & 95-2200, 91 F.3d 159, 1996 WL 419674 at *2 (10th Cir. July 26, 1996) (unpublished disposition); Silva v. Town of Springer, 121 N.M. 428, 435, 912 P.2d 304, 311 (Ct. App. 1996); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987), and, although there are some waivers of immunity for law enforcement officers, district attorneys have been held in New Mexico caselaw not to be law enforcement officers under various factual scenarios, see Coyazo v. New Mexico, 120 N.M. 47, 49-51, 897 P.2d 234, 236-38 (Ct. App. 1995); Abalos v. Bernalillo County District Attorney's Office, 105 N.M. 554, 560-61, 734 P.2d 794, 800-01 (Ct. App. 1987); Candelaria v. Robinson, 93 N.M. 786, 790, 606 P.2d 196, 200 (Ct. App. 1980). The parties did not brief this issue in the motions at bar. I request that, upon ripeness, the parties bring the issue before me by an appropriate motion.

## VII. SUMMARY

In summary, as to the Eighth Judicial District Attorney's Office Defendants, the Counts of Plaintiff's Complaint that remain before me after this Opinion is filed are: (1) Count I (Retaliation under § 1983) against Defendants Paternoster, Gallegos, Padilla, and Backus, in their individual capacities, relating to Defendant Backus' swearing to the truth of the February and July 1997 criminal complaints against Plaintiff and her *ex parte* communication with the custody hearing judge on June 5,

36

1997; (2) Count II (Initiation and Pursuit of Prosecution without Probable Cause under § 1983) against Defendants Paternoster, Gallegos, Padilla, and Backus, in their individual capacities, relating to Defendant Backus' swearing to the truth of the Aggravated Battery charge in the February and July 1997 criminal complaints; and (3) Counts VI, VII, VIII, and X (state law claims) against some or all of Defendants Paternoster, Padilla, Gallegos, and Backus, in their individual capacities. The Counts filed by Plaintiff against Defendant Schraps also remain.

**NOW, THEREFORE, IT IS ORDERED** that the Eighth Judicial District Attorney's Office Defendants' Motion to Dismiss on the Ground of Eleventh Amendment Immunity, filed November 25, 1998 [Doc. No. 6], is hereby GRANTED insofar as it seeks dismissal of the District Attorney Defendants in their entity or official capacities.

Accordingly,

(1) Counts I, II, and III hereby are DISMISSED as to Defendant Eighth Judicial District Attorney's Office and Defendants John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus, in their official capacities;

(2) Counts VI and X hereby are DISMISSED WITHOUT PREJUDICE as to Defendant Eighth Judicial District Attorney's Office and Defendants John

Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus, in their official capacities;

(3) Count VII hereby is DISMISSED WITHOUT PREJUDICE as to Defendants John Paternoster, Frank Padilla, and Donald Gallegos, in their official capacities;

(4) Count VIII hereby is DISMISSED WITHOUT PREJUDICE as to Defendant Eighth Judicial District Attorney's Office and Defendants John Paternoster, Frank Padilla, and Donald Gallegos, in their official capacities; and

(5) Defendant Eighth Judicial District Attorney's Office is DISMISSED WITH AND WITHOUT PREJUDICE as a party to the Complaint.

**IT IS FURTHER ORDERED** that the Eighth Judicial District Attorney's Office Defendants' Motion to Dismiss on the Ground of Prosecutorial Immunity, filed December 29, 1998, [Doc. No. 18], is PARTIALLY GRANTED.

Accordingly,

(1) Count III hereby is DISMISSED as to Defendant Sarah Backus, in her individual capacity;

(2) Counts I, II, and V hereby are PARTIALLY DISMISSED as to Defendant Sarah Backus, in her individual capacity, as described in this Opinion; and

(3) The Eighth Judicial District Attorney's Office Defendants' Motion to Dismiss on the Ground of Prosecutorial Immunity is DENIED in all other respects.

**IT IS FURTHER ORDERED** that the Eighth Judicial District Attorney's Office Defendants' Motion to Dismiss on the Ground of Qualified Immunity, filed January 22, 1999 [Doc. No. 31], is PARTIALLY GRANTED.

Accordingly,

(1) Count III hereby is DISMISSED as to Defendants John Paternoster, Frank Padilla, and Donald Gallegos, in their individual capacities;

(2) Count V hereby is DISMISSED as to Defendants John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus, in their individual capacities;

(3) Counts I and II hereby are PARTIALLY DISMISSED as to Defendants John Paternoster, Frank Padilla, and Donald Gallegos, in their individual capacities, as described in this Opinion; and

(4) The Eighth Judicial District Attorney's Office Defendants' Motion to Dismiss on the Ground of Qualified Immunity is DENIED in all other respects.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Samuel M. Herrera, Taos, New Mexico

Present Counsel for Defendants Eighth Judicial District Attorney's Office, John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus: W. Ann Maggiore, LEGAL BUREAU/RISK MANAGEMENT DIVISION, STATE of NEW MEXICO, Santa Fe, New Mexico, and Jerry A. Walz, WALZ and ASSOCIATES, Albuquerque, New Mexico

Past Counsel for Defendants Eighth Judicial District Attorney's Office, John Paternoster, Frank Padilla, Donald Gallegos, and Sarah Backus: Paul M. Schneider, LEGAL BUREAU/RISK MANAGEMENT DIVISION, STATE of NEW MEXICO, Santa Fe, New Mexico